Good afternoon, everyone. The case this afternoon is En Re Seagate Technology No. 06-M830. Mr. Ferguson. Thank you, Your Honor. May it please the Court, I will be addressing questions 1 and 2 in the Court's en banc order. The present case demonstrates the difficulties patent practitioners and the District Courts are having in trying to determine the scope of waiver that accompanies a patent defendant's decision to rely on the advice of counsel defense to a charge of willfulness. It further demonstrates the fundamental unfairness associated with extending waiver to trial counsel communications and associated work product. If the District Court's orders stand, then the net effect here is that respondents will have access to the mind of Seagate's trial counsel. Seagate respectfully requests this Court clear up that uncertainty and associated unfairness by holding that waiver does not extend to trial counsel when trial counsel was not retained for and did not provide the client with an exculpatory... Does that have any influence on the way the Court ought to consider this matter? Actually, Your Honor, in this case, Seagate retained Mr. Sekimura in May 2000 to provide opinions before the lawsuit was filed. When were the opinions actually forwarded to the client? The first opinion was forwarded to the client on July 24, 2000, which was 11 days after the complaint was filed. So that gets us to the relevant point. Maybe you could address whether or not that might tip a district judge's hand as to whether or not there's any litigation motivation as part of the opinion process. I don't believe it does, Your Honor, because we still have to maintain the separate and distinct roles that opinion counsel play and trial counsel play. Opinion counsel works in a very different world from trial counsel. The opinion counsel's job is to apply this Court's precedent, this Supreme Court precedent, to the facts as it knows it, and render an opinion as to whether or not the client has a good faith belief for going forward with respect to... You do mention that our Court's precedent, but since we're sitting in bank, our precedent doesn't necessarily control. We can revisit it all, can't we? You certainly can. Anyway, we have the law of this circuit, the jurisprudence of this circuit, in the privilege and waiver area. It looks like a piece of Swiss cheese compared to the rest of the world. Wouldn't it be a prudent thing for us to basically go back and eliminate all of those holes, try to get rid of all those exceptions that have basically swallowed it up? Well, Your Honor, I would certainly agree with that. And if we look at, for example, what the Sixth Circus said in the Lott case, they said specifically that if we eat away at the privilege by expanding the fiction of waiver, pretty soon there will be little left of the privilege. I think that clearly applies here. Can you go back and answer my question now? Certainly, Your Honor. So the differences between district court and between the opinion counsel's role and the trial counsel's role need to come into play. When trial counsel is retained, trial counsel's job is to provide risk assessment, to take into account the worst-case scenarios, to focus on things like settlement and design around, and it provides advice to the client on those factors throughout the litigation itself. That's very different from the role that opinion counsel plays, because opinion counsel doesn't know necessarily where the litigation is going to be filed or what the jury in that particular jurisdiction is going to do with the facts. What happens when there might be an admixture of those roles, such as when the trial counsel advises the client as to the particular aspects of the opinion counsel's work, as happened in this case? Actually, that did not happen in this case, Your Honor. There wasn't a meeting? The red brief discusses a meeting at which a trial counsel gave extensive advice to the client with regard to what was happening on the opinion letter as well. No, Your Honor. There's no evidence that that took place at all. Trial counsel attended the management meeting but provided advice on the litigation itself. As Ms. Durham, Seagate's in-house counsel, declared, and which has not been disputed, trial counsel never influenced the role or the work of the opinion counsel, Mr. Sekimura, and Seagate never saw and did not request from trial counsel an opinion regarding the merits of Mr. Sekimura's opinion. So those are not the facts that we have here. The problem is whether, in fact, there are any presumptions that might validly be made if, when we're looking to draw some bright lines out of the concern that there are very few, the way this jurisprudence has evolved, that if, in fact, you get your opinion from some separate person 11 days after suit has been filed, whether it's still free of the presumption that it's untainted by the complaint which has already mentioned willfulness and multiplication of damages. I understand your question, Your Honor. And I would say there's two things. First of all, factually here, in 1999, Seagate's engineers performed an analysis and determined that the Conval patents were invalid. That was relied upon by Seagate prior to the complaint being filed, and Conval was able to take full discovery on that engineering investigation. And then, again, Mr. Sekimura was retained to provide his advice to the opinion counsel before the complaint was filed. Now, in terms of there being a bright-line test, under the facts here, all we're seeking is a bright-line test, if you want to call it that, that would say that when trial counsel was not obtained to provide advice upon which the client relies for purposes of a defense to a charge of willfulness, then waivers should not extend to communications and work product of trial counsel. If there's a bright-line test— What's the rule that you're arguing for? Suppose there's an opinion from Firm A saying that there's no infringement, and then a week later the trial counsel provides an oral opinion to the client saying there is infringement. Is that discoverable? Well, in that case, Your Honor, I think we have to take into account if the trial counsel is giving that advice in the guise of providing an opinion to the client for purposes of willful infringement, then I think— No, no, he's just part of the litigation. That's what trial counsel do, isn't it? They provide advice to the client as to how the litigation is likely to come out. That's pretty common, right? That is very common. All right, suppose that that's what happens here. There is a formal opinion from Firm A, and Firm B, which is the trial counsel, is providing an oral opinion. This is how we think the case is going to come out. This is what we think about infringement. Is that discoverable or isn't it? It's not discoverable, Your Honor. How can you distinguish between the two? The reason is that in the scope of the scenario you just gave, the trial counsel would be rendering advice that's based on the vague reason of the particular jurisdiction in which it finds itself. For example, we may have a case where opinion counsel has given an opinion that says we don't believe that you infringe and you have a basis for going forward. Let's say that the defendant is then sued for patent infringement in the Eastern District of Texas. Now, if trial counsel goes to the client and says, we're going to have a hard time winning in the Eastern District of Texas on this claim of infringement, I don't see how that impacts in any way whether That's not my hypothetical. My hypothetical is that the trial counsel says, I've now looked at the materials in the discovery. I've looked at the depositions. I think that there is infringement here. This is contrary to the formal opinion. Is that discoverable? If trial counsel says that there is infringement, then I think we have a situation where trial counsel has acted as opinion counsel. And in that case, I think the waiver would extend. But that's not what we have here. We don't have those facts at all. How do we know until the documents are produced in camera? We have to look at another reason here is we have to look at the needs. As Federal Rule 26b-3 tells us, we have to look at the needs of the two parties. And if opinion counsel has rendered an opinion that has, for whatever reason, an objectively unreasonable basis for what is stated in it, then the patentee has all the tools necessary to explore why that opinion is objectively unreasonable. And it does not need to invade the mind of trial counsel in order to prove that. It can use experts. It can take the deposition of the opinion counsel. It can take the deposition of the person or the client who relied on the opinion. How about the opinions of house counsel? If there's a waiver with respect to the opinion of opinion counsel, what about house counsel? Your Honor, as we've advocated in our reply brief at page 19, if we have a situation where in-house counsel has been kept separate in terms of there being an in-house counsel who performed the role of working on the opinions and then an in-house counsel who performs the role of being trial counsel and working with the trial counsel, the outside trial counsel, then we think that the line should be drawn there. And the waiver would extend to the in-house counsel who is working on the opinions but would not extend to the in-house counsel who works with trial counsel. What about a company in-house counsel who straddles the wall? He communicates with both the opinion counsel and the trial counsel. Well, Your Honor, I think that that's a more difficult question. Those are not the facts we have here. But probably a common situation in American industry. Indeed. And, in fact, I think the Federal Circuit Bar Association's amicus marif addresses that very situation. And in a case like that, while it will be a little bit more difficult, certainly, we believe that there should still be a line that's drawn where when that in-house counsel is deposed, the deposition will be limited to what took place with respect to the opinion and not the communications that that in-house counsel has had with trial counsel regarding the litigation. Is your understanding, your perception of the way precedent is now, if it's unchanged, that if, in fact, the accused infringer sees all of these complications that we've hinted at here and many more and just says this is too complicated, I'm not going to rely on the advice of counsel, that that would solve all of these problems in terms of whether lines would be drawn or not? That is, that none of this would then be discoverable or all of it? Well, then, Your Honor, the problem that we have is that we have the duty of due care. And it's very difficult for a patent defendant now to succeed in showing that there was no willful infringement without an opinion of counsel. But under some of the district court's interpretations of the Echo Star decision, for example, the defendant is placed in a real Hobson's choice. It has to make the decision, do I want to rely on the advice of counsel defense to protect myself from a charge of willfulness, or do I want to not waive that privilege and risk having my communication with trial counsel exposed and take the risk that I'm going to be found to have willfully infringed? Would you take the same position with respect to the bright line that you're advocating if, in fact, we were to abolish the affirmative duty of care and make it clear that there was no mandatory obligation to obtain advice of counsel? Your Honor, I still think we would need to answer the question of the scope of the waiver. I still think questions one and two would need to be answered. Well, you'd have to. We'd have to answer it. But would we get the same answer, in your view? Yes, I think you still would, because it's still a question of what is the scope of the waiver that's associated with a defendant's decision to rely on the advice of counsel. Even though the decision, under my hypothetical, would be entirely voluntary if, indeed, the advice of counsel that you're proffering by way of defense was admissible at all, it would be a voluntary. There would be no Hodson's choice. It would be entirely your choice to go forward, and arguably you take the bitter with the sweet. I would still believe that under that situation we would still want to preserve the right of the defendant to have candid communications with its trial counsel. So I believe that that would be the case. Mr. Ferguson, following on what we've just discussed, if there's no duty of due care, what are the implications? What use do you make of opinions? Does industry make of opinions in the future? Your Honor, I still think that companies will get opinions, because certainly in— More or less? I think that there will be less opinions, for sure, if there is no duty of due care. Does that depend on the standard that's set if the duty of care is removed? Well, it may depend on what would— if there's going to be something that replaces the duty of due care, then certainly that would raise the question as to whether or not if you decide the duty of due care should be abolished, what would be the standard after that, and if the standard after that would still find defendants in the situation where they felt it prudent to get opinions, then certainly there may still be situations where people will want to get opinions. But to answer Judge Rader's question, I think if there's not a duty of due care, the number of opinions gotten will certainly drop. However, I still think that many companies will need to get opinions and will find them useful for purposes of investment, for purposes of protecting themselves when they make a decision to put a product on the market. Actually, I see them into my— You're into Mr. Lupo's time if you want to turn it over to him since we have switched to the duty of due care issue anyway. Thank you, Your Honor. Mr. Lupo? Good afternoon, Your Honor. May it please the Court. As the Court knows, I'm addressing question three. In the 1,721 patent infringement cases that were studied in Judge Moore's work when she was a professor at George Mason University, out of the 1,721 from the period of 1999 to 2000, 92.3% had a charge of willful infringement. Can it be that 19 out of every 20 cases really have that much information that one could plead that? The 92.3% figure is an indication of how much patent litigation has focused in the last few years on willful infringement and particularly on the trouble-damaged aspect of it. So, why has this occurred? What contributed to this increase? I think it's the duty of due care. Now, the duty of due care may have served its function in early years. The question is, does it still serve its function? And what do you say is the function that's no longer served? That it served in the beginning? Yes. I think it served in the beginning the fact that this was a brand-new court that was trying to get some consistency in the law that this court was created for, and very much the standard that is set forth in the Moore-Bremsey case when it explained what happened in the 1982-83 realm. But in Moore-Bremsey, just three years ago, we set out the duty of due care, perhaps in dictum, but what does your position do to the stability in the law? We've had this precedent for 25 years, and we've recently reaffirmed it. Well, there are several reasons, Your Honor, where I believe that the duty of due care should not be relied on, it should be changed, beginning with the Supreme Court's precedent in this area, and also some of the precedent that we saw just this past Monday in the Safeco case. But I think, before I get to that, the focus has come down to the point where the plaintiff can use this as a weapon by pleading at the beginning to put the defendant right off the top in the position of having to take and prove that it is not guilty of infringement. Is your only concern the burden of proof, or is there more to it? I'm sorry? It says here it's your only concern. You and many of the amici said the problem is with who has to prove a negative or a positive. Is that what the authentic concern is, is to where the burden of proof lies, or is there more to it? There's more to it. It is an authentic concern, and it is not the concern. The first concern, I believe, is that it really dictates a standard that is a negligent standard. Merely by the plaintiff sending a letter, for example, saying you infringed the duty presented in that letter, if there's no response, no adequate response, no finding of a reliance on an opinion of counsel, there's a breach of the duty. And what the Supreme Court has indicated is that more is needed. Mr. Lupo, excuse me for a second. If, in fact, the court decides to remove the duty of care, would the burden of proof also shift to the plaintiff at that point? If it adopted the Supreme Court standard, yes, it would, Your Honor, because the plaintiff would then have to show reckless disregard, and it would have to go through the standards that have been provided over the years for both willfulness and for terrible damages. How would you ever get the evidence to prove that? I'm sorry? How would you ever get the evidence to prove that? The evidence to prove, Your Honor? Think of the underwater facts themselves, where the attorney actually recommended that they go ahead and infringe because they only have to pay royalties anyway. How would you ever get that evidence? It would be shielded by the attorney-client privilege. Well, that's the question I think that Mr. Ferguson just addressed. If you don't, perhaps it would be difficult. It would be difficult, but the attorney-client privilege has to be protected wherever it can. It's fundamental to the jurisprudence system, and if a defendant cannot talk to his trial counsel or his litigation counsel freely and openly, then that's a real problem. The scenario that you paint, based on the facts of underwater devices, is really one that raises concern, of course, because the facts in that case were really, using my word, abhorrent. In the most recent decision that you cited from Monday that was issued by the Supreme Court, Safeco, the willfulness aspect was written into the statute. It's not written into our statute. In the Safeco case, there were two levels in that statute. One that provided for compensatory damages, limited in a certain area, and the other that provided not just for the actual damages, but also for punitive damages. So that's not unlike the law of this court, in interpreting sections 284, that enhanced damages are, of course, an available area of law if you can prove that there is reckless disregard or reprehensible conduct. Well, willfulness, though, is not in our statute. It's been grafted on by case law. That's correct, Your Honor. So does that make a difference? Your Honor, I don't believe it does, because as the Safeco court held, willfulness is equivalent to recklessness. And while the word recklessness does not appear in the statute, certainly the concept of taking a position where you don't respect the patent at all when the plaintiff's patentee calls it to your attention would be reckless under quite a few circumstances. Would you be able, then, to defend? You're about to run out of time. I just want to ask one question. Yes, Your Honor. You've been talking about the Supreme Court cases and so forth. Given the Supreme Court decisions in the last couple years in this field, in the patent field, in some of our cases, don't you think that the value of patents is being drained away and that your proposition would drain it even faster? Your Honor, we all worry about the value of patents being drained away, but I suggest that the draining might be much more evident from the fact that the defendants are put into a position right off the top where they really are not in a position to receive more than due notice from the plaintiff about the patent and an assertion of infringement. There should be more. So I think it's very important that the standards are clear. Well, you don't think that the combination of these various cases is throwing us back to pre-1982? No, Your Honor, I do not, because we go back to the 1853 Supreme Court decision involving McCormick, if I can find it here in a second, where the court indicated that long-term or malicious conduct for vindictive or exemplary damages for determination of willful infringement is proper. That is not really that different from what the Supreme Court has said in recent years about the standards for the patent system. Mr. Lupo, it seems to me that drawing a line between opinion counsel and trial counsel in terms of the scope of waiver is a difficult one and that a more appropriate line is based on relevance, which would bring into play the standard that's applicable. And I think that's why the question of the duty of due care becomes so important in this context. I think if that standard were changed, that would alter significantly the question with respect to relevance and change the dynamic quite a bit and perhaps avoid entirely this absence choice that was mentioned earlier. What are your comments to that? Well, Your Honor, the relevance is an issue that comes into play under the circumstances that Mr. Patterson was asked about after a waiver, because then you would know that the trial counsel had given opinions, if you could establish them, that were in the exact line of what the first opinion attorney gave and that the defendant said, Now that may or may not be the situation, but by the time you've done that, you've in effect injured the entire concept of attorney-client privilege and maybe just in the patent area, which would make it even worse. Okay, we'll save the rebuttal time for both of you and let's hear from the other side. Thank you, Your Honor. Thank you. Ms. Steinberg? May it please the Court, Deborah Steinberg for respondence. Your Honor, we ask that this Court uphold the District Court's refusal to adopt the selective waiver rule proposed by Seagate. The District Court's decision was a fact-based, discretionary decision that is grounded in decades, if not generations of precedent, rejecting sword-and-shield privilege abuse. Mendamis is particularly inappropriate here because Seagate has violated a court order and the federal rules by not providing a privilege law that this Court could have as its record in determining whether documents, particular documents, would be subject to the District Court's ruling and would be appropriate to be produced. Ms. Steinberg, you've noticed the depositions of Seagate attorneys, correct? Yes. I'm just interested in what communications would not be disclosable, that you feel you would not be able to ask these trial attorneys at deposition. In this case, Your Honor, where we have post-complaint and opinions, not only post-complaint, Your Honor, but opinions that were rendered after Seagate had embarked upon the conduct that is unlawful here, we would be able to ask questions regarding the subject matter of those opinions. What about a statement to the client that they should settle the case or that giving them a percentage of their chances of winning or losing? Trial strategy would not be part of the waiver, Your Honor. So is that no to the two hypotheticals I posed? You would not be able to ask them about that? I would not ask about settlement or percentage of success or possibility of success, but what I would ask about, Your Honor, is what the district court asked in the oral argument. They asked both the defense counsel, both Compact and Seagate, if you told your clients, you know, Mr. Setlemore's opinion is the sloppiest work I've ever seen. It has no legal basis, no factual basis. Isn't that, the magistrate judge said, isn't that relevant to whether reliance was reasonable? And the answer, shockingly to me, was no, it's not relevant. I think it's highly relevant, as some of the questions asked earlier today. What about if they gave an opinion that was completely at odds with the content of the opinion counsels? Absolutely relevant, Your Honor. Because if trial counsel has told Seagate that the opinion cannot reasonably be relied upon, which is the thrust of your question, in sum or substance, then they must either produce that information or they must withdraw that opinion. They cannot put on a defense. But maybe you'd misunderstood my question. I didn't mean if they were commenting explicitly on what opinion counsel had said, but what if independently they give their client their assessment of the case, then there's some overlap in terms of the issues and you think that would be just relevant and disposable. Absolutely, I do. Ms. Steinberg, you emphasized that the opinion in this case came after the litigation started. But, of course, I could issue a patent one day, give you notice the next, and sue you two days later, in which case the opinion would always come after the litigation began. It seems like timing is somewhat irrelevant in this, isn't it? No, sir, I think timing is extremely relevant under the facts of this particular case. Here we have... But in my hypothetical, which isn't that unusual, I can have a continuing application on file and tailor claims to attack your product and then sue you almost instantly upon its issuing, in which case you'd always have an opinion coming after the litigation's file. Yes, Your Honor, but we can... These are common strategies, so... We can create hypotheticals, many hypotheticals. But the point is that this cuts both... Your timing point cuts both ways, doesn't it? No, sir, it doesn't, even in your hypothetical. If the accused infringer elects to assert the advice of counsel defense as a defense in the post-litigation period, that election is going to produce an express waiver. And the scope of the waiver is bounded by what the infringer, what the accused infringer knew or believed at the time he relied and for the course of ongoing reliance. So to the extent that the state of mind of the infringer is informed and shaped by the communications with trial counsel or any other source, in-house or any other source, then that would be part of the waiver. Now, in this case, we've heard a lot about trial counsel, but there's also an issue as to waiver in-house counsel communications. And that's very important in this case because a lot of the facts that Mr Ferguson conveyed to you aren't really the facts. What we have here is we have in-house litigation counsel at the center of communications. In-house litigation counsel, on page 19 of Seagate's reply brief, is defined as the client. So what in-house litigation counsel knew, what client Seagate knew, is relevant to whether Seagate reasonably relied on the opinions. Respond to Mr Lupo's point that 92% of all cases allege willfulness. Is that really based on a good faith belief that you caught the other guy with their hand in the cookie jar? Our case, Your Honor, is not a cookie cutter. I'm not asking about your case. We're dealing here with the whole landscape of patent litigation. Is willfulness really occurring over 90% of the time? I wouldn't know the answer to that question. I know that in my case... Isn't that a boilerplate assertion? You're infringing my patent. You've infringed it willfully. And I want an injunction and increased damages. And it's a strategy. Then you get more discovery and you get to fish for whatever you want. Shouldn't we address that strategy? Your Honor, this case doesn't employ that strategy. But in any case where willfulness is alleged, and this Court has held that you don't need to plead willfulness with a non-b-particularity because it's not a fraud claim, but in any case where willfulness is alleged, it is up to the defendant whether they want to assert advice of counsel. But don't they have to assert it? Under the duty of care, they pretty much have to assert advice of counsel, don't they? No, Your Honor. They have other options. What are the other options? The recent Microsoft trial is a case in point. In that case, which is the largest patent infringement verdict, I believe, in the history of the country, there was a willfulness claim. There was no opinion in that case. And the judge held no willfulness. And I know that Microsoft was one of the amicus. But that doesn't answer the question, how do you prove duty of care if you don't have an opinion? What's the basis for proving it? The duty of care is the duty of care to obey the law, Your Honor. And one way you can do it, as in the Microsoft case, was licensing. You can do it by a design amendment. There are other methods. You do not have to, and this Court has recognized that there is no legal compulsion to assert an advice of counsel defense. But if that election is made, Norbert said there is a waiver. And whenever that election is made, there is a waiver that is sufficient to inform the Court of the infringer's state of mind. What about the duty of care? I see a lot of argument about stare decisis. Let's suppose we take a fresh look at this. What's the basis for reading a duty of care into the statute? The recent Supreme Court case, the one that came down on Monday, Safeco, spoke about the statutory duty of care. In this case, in this situation, there is a duty, a strict liability. That's what Safeco was against you. It's for you? Yes, Your Honor. Safeco says there can be no liability for willfulness if there is a reasonable dispute on the law, if there's objective reasonableness, right? Safeco must be read under the facts of that case, which were very unique. In that case, there was a statute that was an ambiguous statute, and the only issue was what that statute meant. The facts were not a dispute. The Court, with respect to this ambiguous statute, there was no Court of Appeals authority, and there was no authoritative guidance from the agency. And the Court held that when, in those unique circumstances, which are not present here, in those circumstances where there are two plausible interpretations of an ambiguous statute and no guidance from the Court of Appeals, and the defendant chooses to follow one of the two plausible interpretations, then in that circumstance, he may have acted negligently, he may have violated the statute, but he didn't act willfully. Willfully meaning not just intentional, but reckless disregard of the statutory duty. It strikes me that the case is against you, but put it aside for the moment. Apart from Safeco, what is the basis for reading a duty of care into this statute? The statute sets up a strict liability offense. So there's liability for willful infringement in every case? The statute says... Is that what strict liability means, that there's always willful infringement? No, Your Honor. Well, what does strict liability mean, then? Strict liability means that you are liable if you infringe without regard to your state of law. You can be... You mean there's strict liability for the infringement, not for the willful infringement? Yes. Okay. So, but what's the basis for reading a duty of care requirement with respect to enhanced damages into the statute? Your Honor, the court has held, as recently as three years ago in New Orleans, that there is a statutory duty of care to avoid infringing the known patent rights of others. I understand that we've said that, but that's not the question. What is there in the language of the statute, in the legislative history, in Supreme Court authority, in the common law, that suggests that the duty of care should be read into this statute? The duty of care is merely the duty to obey the statute, Your Honor. And it's not the duty to get an opinion, to rely on the advice of counsel. This Court has already said that duty has been obviated. It no longer exists. To the extent that that's what Mr. Ferguson was arguing, that there is still a duty to get an opinion, there is no legal compulsion to get an opinion. There is no adverse inference, and there is no requirement to get an opinion. But, Norbert has held, if you want an opinion, and Mr. Ferguson indicated that an opinion is something that many defendants would want to get, if you want an opinion, you're going to have a waiver. Norbert said that. In this circumstance... But that doesn't seem to address the duty of care question. My question is, what is there in the statutory language, in the legislative history, in Supreme Court authority, or in the common law, or in any other statute, that suggests that duty of care is the right standard for enhanced damages? The standard for enhanced damages in this court is wilfulness. Right? And, wilfulness... You're saying there's nothing but off-precedent. Yes. Which ought to be of significance, but it's off-precedent. Not statute, not Supreme Court authority. Well, the statute requires that anyone who makes, uses, manufactures a product that infringes shall be liable. And... Exceptional case. That's correct. But there's no willfulness requirement language in the statute itself. That is true. That's implied by this court. So, in the allegation of willfulness in a complaint, why should not that be the same burden on the patentee as anyone else to carry the burden of establishing willfulness instead of just making an allegation and shifting the burden to the alleged infringer saying that they did not... In this case, Your Honor, we carried that burden. We pled with particularity in our complaint the facts that, as we knew them at the time, that supported the willfulness allegation. It wasn't one-line... ...pleading. Do you think that... Even so, if in fact you had the pleading properly made with specificity, does that carry the day? You still have to have the evidence to support it. And at that point, once you prove willfulness, then the burden should shift to the defense. But in most cases, it's the other way around. The burden is carried by the defense instead of the plaintiff. This court is held in bold and loud exactly what you just said. The patentee, the plaintiff in this case, has the burden of showing a clear and convincing evidence willfulness, meaning potential willfulness disregard. And we have alleged facts and we've laid them out in our complaint to show deliberate copying, to show bad faith licensing and concealment of infringement, which this court has held repeatedly if rise to a willfulness claim if proved at trial. So we agree with you that it is our burden to put forward those facts. After we carry our burden as a promulgation case, then the burden shifts properly to the defendant to put up a defense. If the defense is the advice of counsel defense, Your Honor, then they have expressly waived their privilege. In this case, they've waived legal advice that they received after the complaint was filed and after the infringing conduct began and the waiver has to be commensurate with that defense. It would be unfair and a violation of decades precedent prohibiting selective waiver to permit the defendant to rely on post-complaint advice and to preclude the patentee from exploring all of the information that the defendant had at the time that it relied and from the course of reliance. So... Ms. Steinberg, when you say rely on post-complaint advice, are you talking about relying in terms of feeling comfortable to continue to infringe or relying in the sense of feeling that the opinion you got before the complaint was filed was a good one? Well, in this case, there was no opinion you received before the complaint. I'm speaking... You know, we're in a bit of a hypothetical regime here in our discussion. Yeah, I understand that, Your Honor. And... But I have a real case on real facts, so sometimes I might contrast the hypothetical to what we have here. No, that's fair enough. I understand that. But, I mean, if you say rely, you're talking... There's two kinds of reliance. There's relying in terms of someone saying the opinion you got before was good, and there's relying in terms of saying I can continue to infringe. I think if you received an opinion before the lawsuit began, which is not the case here, and you relied on it into the post-complaint period, your reliance has to be good at all periods throughout that period, throughout the course of... or the duration of the reliance. So that if at some point... If you... I'll engage my own hypothetical. If at some point trial counsel interviews a witness and discovers that there are facts that would render the complaint  or unreliable or incompetent, then at that point the reliance has to be assessed if it's continued, that that disclosure has to be made. Now, in this case, we have in-house counsel who is receiving information from trial counsel and is at the same time the gateway... That's the word that the opinion counsel used. The gateway to the opinion counsel's information base within Seagate. In-house counsel is also the counsel who selected the reliance witness and who is the information source for what the reliance witness is relying on. So we have a situation on the facts of this case where if in-house counsel withheld information received from trial counsel, withheld it from the opinion counsel, then there would be a problem with that opinion. That opinion would be incompetent because it would be incomplete or inaccurate. If, on the other hand, in-house counsel conveyed its information that it received from trial counsel to the opinion counsel, what would happen then? Well, Seagate's separate counsel test, the whole basis for its privilege waiver, would fail. And finally, if in-house counsel withholds information received from trial counsel from the reliance witness, the hand-picked reliance witness, withholds information from him, what happens? Well, his reliance testimony is compromised. So in this case, it is critical to our challenging the advice of counsel defense that we obtain information that the in-house counsel had. It is the in-house counsel's state of mind that will govern the willfulness inquiry. And we have a situation where in-house counsel has an opinion that was pre-complaint, but it wasn't produced to us, and it wasn't relied upon by Seagate. Now, that opinion was conveyed to the reliance witness. The reliance witness had it in his mind at the time that he determined to rely, but we have not been allowed to explore that opinion. That is just one example of the abuse that we faced in depositions in this case. Mr. Eiberg, as I understand the order that was issued, the discovery order, because the opinion that was rendered after the commencement of litigation extended to infringement validity and enforcement, that your intention is to inquire of trial counsel their position, their opinions with respect to all three, infringement validity and enforcement. Is that correct? Yes, Your Honor. So that you, in effect, have unfettered access to trial counsel's views throughout the entire course of the litigation as to their assessment of infringement validity and enforcement. How are they supposed to defend themselves? Well, Your Honor, first it's not unfettered. The district court, and consistent with this court's decision in EcoStar, has held that uncommunicated work product is not discoverable. Only communications and documents referencing those communications. I understand that, but nonetheless, we can assume that through the course of the litigation, that trial counsel will be communicating regularly with the client. They'll be assessing and reassessing as the case goes forward, as evidence comes to light. And as I understand the order, this gives you the right to continually probe and ask these views throughout the course of the litigation as long as the infringement is ongoing right up until the trial itself, correct? Well, Your Honor, the federal rules provide the answer to your question. Federal Rule of Civil Procedure 26E2 provides what happens when you are required to supplement a discovery response. So discovery responses are served and answered as a point in time. Interrogatories, for example, are answered by verified answers. And then the federal rules say in any case, not just this one, in any case, if the answers or the responses given become at some point in the future materially incomplete or incorrect, then there is a duty to supplement. So only if the responses that were given at a point in time, whenever that may be, in the future become materially incomplete or incorrect, is there a duty to supplement. So you get a picture at the outset of what their assessment is of infringement validity and enforceability and should that assessment change during the course of the litigation, you get an update. Again, my question is, with that extensive waiver, how can they defend themselves? In effect, you have access to their entire case. Now, you don't have access to their strategy, but nonetheless, you know what their assessment is of the likelihood of success on infringement validity and enforceability. Somehow that strikes me as being fundamentally wrong, although I'm sympathetic to you in terms of drawing lines between opinion counsel and trial counsel. You know, I recognize that there are competing policies here. I've laid them out. But in this situation, where the defendant has elected the defense, chosen to assert a defense based on legal advice, and actually produced that legal advice, so it's an express waiver. You're not an implied waiver, but an express waiver. In that circumstance, what is the option to put on one side of the story at trial? That offends the adversary system based on cases that go back 100 years or more. Well, this then brings us to question 3 and the standard, the duty of care, whether we should withdraw that duty and set forth a higher standard that perhaps would no longer render those opinions relevant, or at least give those opinions a different relevance. Your Honor, the standard is willfulness, and the Supreme Court has held that willfulness is a constitutional standard for, in the case that came out on Monday, for punitive damages. But punitive damages have a reprehensibility standard, not a due care standard. If we take your line of reasoning, do we end up discarding due care and going to a higher standard? Punitive damages do not have a reprehensibility standard. Punitive damages have a willfulness standard. And the Supreme Court has very often referred to reprehensibility as a synonymous term, a standard, if you will, for applying willfulness. The Supreme Court, in addressing... Is there a distinction between punitive damages and the enhanced damages under willfulness? Yes. The enhanced damages are statutory damages capped by the statute or awarded by the district court in its discretion. But it's punishment for reprehensible behavior, right? Not necessarily... Not negligent behavior,  Isn't that a distinction we ought to acknowledge? I think the court has acknowledged it on multiple occasions. This court has said that the enhanced damages cannot be awarded for mere negligence. And this court has held that they can only be awarded for willful. But the due care standard invokes a negligence context, not a reprehensibility context. There seems to be a conflict in the way this is coming across. The Supreme Court in the St. Croix case actually used the term statutory duty of care when it was discussing punitive damages under the context that it was addressing. So it is not a negligence standard as applied in these areas. And the Supreme Court case's use of the term statutory duty of care proves that to be the case. Here it is a statutory duty to obey the law. And when the act of the defendant is above the baseline culpability, here the court has held it willful, intentional or reckless disregard of the law, and is above the baseline culpability of strict liability, then enhanced damages are appropriate. Even if we don't get rid of the underwater devices case, going back to the question I asked the other side, would this court sitting in bank be providing a service if it got rid of this Swiss cheese concept of privilege and waiver that we've seen to adopt gradually over the years and go back to where the rest of the world is? Assuming we don't, I think repealing that case, overruling that case, might alleviate the problem to a greater extent. But if we don't, should we at least go there? The Supreme Court has said that courts should be very cautious about laying down bright-line tests in the privilege area, and that they should not do so, even if they could. And this court has held in Fort James that there are no bright-line tests in the waiver area. The court has also given the district court discretion to decide these issues, and that's where it should lie. These are highly intensive, fact-based... How about if the district court has the obligation to define the scope of the privilege, but that once it's waived, it's waived. It's waived for all time, for all people, and we wouldn't be parsing, as we have been all afternoon here, about the different species of lawyers and what they do and don't do, and when they do and don't. Wouldn't that be a step forward, or not? Unless this court holds that there can be no divisive counsel defense in a willfulness case, there's going to be a waiver question. That's one thing Seagate and I actually agree on. There's going to be a waiver question, as long as there's a divisive counsel defense. Courts are going to have to grapple on the facts with the scope of the waiver. On these facts, where we have an opinion rendered after the misconduct has begun, after the litigation began, then the waiver is defined by those facts and by the election of Seagate to proceed along those lines. But to lay down a right-line rule is, as one amicus said, a dangerous situation, because you can never anticipate all of the myriad factual situations that will be presented in various cases. Could I follow up on a question that I think Judge Rader raised with respect to the language used in underwater devices and to see how you parse that? I think the language is an affirmative duty of care, which suggests a burden and it suggests negligence. Now you say it doesn't really mean negligence. All it means is a duty not to act willfully, as I understand what you're saying, which is just whatever the legal standard is, you have a duty not to transgress the legal standards. That doesn't tell us very much. Now as far as the affirmative duty, which kind of suggests burden of proof, you said a while ago, I think, that there isn't a burden on the accused infringer and I think you said until you, the patentee, have already established proof of willfulness and then the burden shifts to the accused infringer to put up a defense. That's not the burden of proof, I take it, the risk of non-persuasion. That's just the ordinary it's your turn to present evidence if you want to, but I take it you're not saying the burden of proof shifts. You're saying the burden of proof remains by clear and convincing evidence with the patentee throughout to show willfulness, which is more than negligence, correct? That's a very strange way to read the language, at least, from underwater devices. I wonder whether that language has long since served its purpose since we seem to agree in large measure on the substance of what the test ought to be. Because I think what you're saying is not very different from what Mr. Lupo was saying on the substance of the right test. Goldenrod has said where the burdens lie. We don't disagree with that. Any more questions? Thank you, Ms. Steinberg. Mr. Ferguson, you have five minutes. Thank you. I want to clear up one thing, first of all. At page 14 of the red brief and as Ms. Steinberg alluded to, she said that there was an in-house opinion of counsel and that is not the case. There was no in-house opinion of counsel on infringement, invalidity, or unenforceability. In fact, Conval did take the deposition of the in-house counsel to confirm that he did not render any such opinions like that.  Is that just written or oral? I'm sorry, Your Honor? You're saying he didn't write an opinion, but he certainly must have given some oral advice. That's his job, isn't it? No, and in fact he did not, and that's how he testified, Your Honor. He took no opinion as to whether they infringed or were valid or anything. No, the in-house counsel was the person who was involved in the engineering analysis that was done, and Conval took depositions as it related to that subject matter. Conval refers to another alleged opinion, but what I'm telling you is that that opinion did not address infringement, invalidity, or unenforceability. Now, Conval refers to this being a selective waiver from Seagate. This is not a selective waiver. This is a subject matter waiver, and under Conval's test and what the district court here has asserted is that the subject matter waiver would extend to the communications and work product of trial counsel, and we submit that as contrary to precedent, which requires us to try to preserve the privilege where possible, and it's also contrary to federal rule of civil procedure 26B3, which mandates that work product and communications, conclusions, opinions, mental impressions, and legal theories of an attorney or other representative concerning the litigation must not be disclosed. I want to turn to the hypothetical questions that were asked, Judge Dyke and Judge Prost asked them, regarding the trial counsel giving advice or rendering an opinion that says you infringe or that's a very poorly written reliance opinion. In situations like this, again, this is a need-based analysis, and because willfulness is measured as an objective standard, respondents have all the tools necessary for them to explore whether or not the opinion of counsel that Seagate is relying upon objectively meets this course criteria for whether or not it had a reasonable basis for going forward and continuing with its activity. Though it can involve, can put forth experts to contradict the opinion of counsel that Seagate received, they can depose the opinion counsel, and they can depose the person within Seagate who relied on those opinions. But they can't get a contrary opinion. I'm sorry, Your Honor? They can't get a contrary opinion that your client received to determine what your client's real state of mind was. But even... That's your position, right? There's a contrary opinion that trial counsel orally gave an opinion that's directly contrary to the opinion on which you rely. They can't get that, right? I say they cannot get that, Your Honor. That's correct. And again, the reason for that is because the need, weighing the needs between Seagate's need to have the ability to communicate candidly with its trial counsel on the litigation outweighs the need the convolved has to obtain that type of discovery. Again, because willfulness, it's not measured necessarily on whether or not Seagate was reasonable. It's measured based on an objective standard. Would a prudent person have been able to rely on that advice? And so we think in this situation, the needs of Seagate for having the ability to communicate with its trial counsel outweighs the need of convolved. Now, in our case, we think presents a very clean set of facts for you to decide this. As Magistrate Judge Francis expressly found in the petition in the May 28, 2004 order, Seagate contends and the plaintiffs do not dispute that its trial counsel played no role in selecting Seagate's opinion counsel and did not influence the drafting of Mr. Sekimora's opinions. And then he goes on to say that there is no evidence that trial counsel and opinion counsel have conspired to create a new opinion to gain an unfair advantage in the litigation. There are no sword and shield concerns here. This case presents an excellent opportunity for this Court to hold that when a client relies on the advice of counsel to a charge of willfulness, that waiver, associated waiver, should not extend to the communications and work product of trial counsel. Thank you. Thank you, Mr. Ferguson. You have three minutes if you wish to use it. Your Honor, I must be sure that Mr. Ford has any particular questions that they would like to ask with regard to my issue. I think that everything that we care to tell the Court about doing what we care has already been said. Well, I do have a question. I alluded to what I took to be your take on the proper standard and suggested that the two of you seem to have seemed to be pretty close as to what the standard is after we've sorted through all the language. Do you agree with that? The two of us? The two counsel, the opposing counsel, about the proper standard for the willfulness standard. That is to say even though underwater devices uses language like affirmative and duty of care, which suggests, as the traitor says, it kind of suggests negligence at least, but in fact no, that it's willfulness, which is at least recklessness or intentional conduct, bad faith conduct, and that the burden of proof, at least the risk of non-persuasion never shifts. You heard her account of what the right test is. Is that your view of what the right test is? The burden of proof is different in the sense that it is on the claim to demonstrate both willfulness and non-persuasion. Well, that was my impression. Okay. I'm glad you did. Okay. Any other questions? The case is taken under submission. All rise.